UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE OZURUIGBO,    )<br>                                     )<br>         Plaintiff,                  )<br>                                     )     No. 1:23-CV-04218<br>         v.                          )<br>                                     )<br>THE CITY OF EVANSTON, KELLY    )     Judge Edmond E. Chang<br>GANDURSKI, and NICHOLAS        )<br>CUMMINGS,                      )<br>                                     )<br>         Defendants.              )  | |

**MEMORANDUM OPINION AND ORDER**

Michelle Ozuruigbo sued her former employer and supervisors—the City of Evanston, Kelly Gandurski, and Nicholas Cummings—for race and gender discrimination, as well as retaliation, under Title VII of the Civil Rights Act. R. 1-1, Compl.[1] The Defendants move to dismiss all claims for failure to state a claim under Civil Rule 12(b)(6). R. 13, Defs.' Mot. Ozuruigbo separately moves for sanctions against Evanston under Civil Rule 11. R. 24, Pl.'s Mot. For the reasons that follow, the dismissal motion is denied in part and granted in part, and the sanctions motion is denied.

**I. Background**

In evaluating the motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Ozuruigbo is an African American woman who worked as a Deputy City

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has federal question subject matter jurisdiction over this case under 28 U.S.C. § 1331.

Attorney for Evanston. Compl. ¶¶ 2–3. Cummings was Ozuruigbo's direct supervisor, and Gandurski was the Deputy City Manager and then the Interim City Manager when Ozuruigbo was a Deputy City Attorney. *Id.* ¶¶ 6–7. Ozuruigbo alleges that she was subjected to racist slurs from Cummings, *id.* ¶¶ 11–13, and received derogatory comments in the workplace because of her box-braids hairstyle and race, *id.* ¶¶ 14–19. According to Ozuruigbo, she received negative performance reviews at work because of her race and gender. *Id.* ¶¶ 21–22, 46, 50. For example, she received feedback that she was "intimidating" in a meeting with a client, and "could not own a room" when presenting to City Council. *Id.* ¶¶ 21, 24. She also alleges she was prevented from supervising students or delegating work because of her race and gender. *Id.* ¶¶ 34–37, 46, 50. In addition, Ozuruigbo alleges that because of her gender, she, unlike male employees, was required to host a baby shower, and received only limited breaks for lactation despite her recent childbirth. *Id.* ¶¶ 38, 46. Ozuruigbo was ultimately placed on a performance improvement plan by the human resources department, which she alleges included pretextual and false allegations against her. *Id.* ¶¶ 38–40. Lastly, Ozuruigbo claims that Cummings was aware of the race and gender discrimination against her, and indeed sent her a video called "What It's Like Being Black At Work" about race and gender discrimination in work settings. *Id.* ¶¶ 21–23, 26–28. Despite this alleged acknowledgement of the discrimination, Ozuruigbo claims that Cummings said, "I would prefer that it doesn't go this far just yet," when she told him of her plans to file a formal report of discrimination to the human resources department. *Id.* ¶¶ 26–27.

2

Ozuruigbo brings three counts under Title VII against Evanston, as well as against Gandurski and Cummings in their official and individual capacities: gender discrimination, Compl. ¶¶ 44–47, race discrimination, *id.* ¶¶ 48–51, and unlawful retaliation, *id.* ¶¶ 52–55. Gandurski and Cummings move to dismiss all three counts against them in their individual capacities, arguing that there generally is no individual liability under Title VII. R. 14, Defs.' Br. at 3–6. Evanston moves to dismiss Count 3 for failure to allege an adverse employment action. *Id.* at 12–13. Evanston also moves to dismiss Ozuruigbo's claims for punitive damages under all three counts. *Id.* at 13.[2] Ozuruigbo for her part moves for sanctions against Evanston and its counsel based on Evanston's Answer and Affirmative Defenses. Pl.'s Mot.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might

---

[2]The Defendants also moved to dismiss Counts 1 and 2 for failure to allege severe and pervasive discriminatory conduct. Defs.' Br. at 6–12. As the Court already explained and decided, this part of the motion is denied because the Defendants demand too much specificity from Ozuruigbo at the pleading stage. *See* R. 16, Minute Entry 08/03/23.

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

3

keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

#### A. Individual Liability

Cummings and Gandurski move to dismiss the claims against them in their individual capacities because there generally is no individual liability under Title VII. Defs.' Br. at 3–6. They also argue that the claims against them in their official capacities and the claims against Evanston are redundant. *Id.* at 3. Ozuruigbo responds that dismissing the claims against Cummings and Gandurski would open the door for Evanston to argue that Cummings and Gandurski acted outside of their employment, which then in turn would justify dismissal of the claims against Evanston as well. R. 17, Pl.'s Resp. at 3. According to Ozuruigbo, this is a factual question that requires discovery, and Cummings and Gandurski should stay in the case until then. *Id.* at 3–6. The Defendants reply that that Ozuruigbo attempts to amend her

Complaint in her response brief by pleading in the alternative that Gandurski and Cummings acted outside the scope of their employment. R. 22, Defs.' Reply at 3–6.

Both Ozuruigbo's response and the Defendants' reply briefs miss the mark. Title VII prohibits *employers* from discriminating against their employees because of their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. The Seventh Circuit has long held that, both in 1964 and in 1991 (when Congress passed the Civil Rights Act of 1991, amending the damages available under Title VII), "Congress never intended individual liability." *E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995). The remedies available under Title VII (as well as the Americans with Disability Act and the Age Discrimination in Employment Act) are of the kind "that an employing entity, not an individual, could provide." *Id.* Moreover, the Civil Rights Act of 1991 provided for different caps on damages for employers of different sizes, but said nothing about what kind of damages could be assessed against an *individual* defendant, further implying that individuals are not proper defendants under Title VII. *Id.* There is an exception of sorts for sole proprietors of a business, but that exception does not, of course, apply here. *Id.* at 1280 n.2; *see also Smith v. Castaways Family Diner*, 453 F.3d 971, 978 (7th Cir. 2006). Ozuruigbo's citation to *Suarez v. Illinois Valley Community College*, 688 F. Supp. 376, 380 (N.D. Ill. 1988), does not support a different result, because in that case, the plaintiff also brought Section 1983 claims, which do allow for claims against defendants in their individual capacities. *See* Pl.'s Resp. at 5–6.

Here, the Complaint asserts only Title VII claims, and plausibly alleges only that Evanston, and not Cummings or Gandurski, was Ozuruigbo's employer when she was a Deputy City Attorney. *See* Compl. ¶¶ 3, 6, 7. So, as a matter of law, there is no basis for claims against Cummings and Gandurski in their individual capacities, and there is no need to keep the individual defendants in the case in their official capacities—that would indeed be redundant with suing the City of Evanston. *See Carver v. Sheriff of LaSalle Cnty.*, 243 F.3d 379, 381 (7th Cir. 2001) (explaining that a "Title VII claim necessarily was an official-capacity action because only an 'employer' is covered by that statute."). The claims against Cummings and Gandurski in their individual and official capacities are dismissed. The dismissal is with prejudice because this is a matter of statutory interpretation that no fact discovery can fix. (If the Court is somehow missing something on the statutory definition of employer, then Ozuruigbo may file a motion to reconsider the with-prejudice dismissal.)

### B. Adverse Employment Action

The Defendants also move to dismiss Ozuruigbo's retaliation claim, arguing that Ozuruigbo has not adequately alleged an adverse employment action. Defs.' Br. at 12–13. "Title VII requires the plaintiff to allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (cleaned up); *see* 42 U.S.C. § 2000e-3. The Supreme Court has long made clear that the standard for an adverse employment action is less demanding in the context of retaliation claims as compared to substantive discrimination claims under Title VII. *See Burlington*

6

*Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Under the retaliation standard, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (cleaned up).

The Defendants argue that because Ozuruigbo does not allege that she was terminated from her job, she did not suffer an adverse employment action. Defs.' Br. at 12–13. And according to the Defendants, Ozuruigbo's allegations that she was placed on a performance improvement plan and unfairly reprimanded do not amount to adverse employment actions. *Id.* But the Defendants demand too much to adequately allege an adverse action for a Title VII *retaliation* claim. At the pleading stage, Ozuruigbo's allegations that she was discouraged from reporting discrimination to human resources, stripped of some of her job responsibilities (including supervision), and threatened with termination plausibly allege that she "well might have [been] dissuaded … from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (cleaned up); *see* Compl. ¶¶ 10, 26–28, 37–38, 40. The Seventh Circuit cases that the Defendants cite either involve motions for summary judgment, *see Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 677 (7th Cir. 2011); *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010), or do not articulate the adverse employment action in the context of a *retaliation* claim, *see Herrnreiter v. Chi. Hous. Auth.*, 315 F. 3d 742, 744 (7th Cir. 2002). Defs.' Br. at 12–13. As the Supreme Court has

7

explained, "[c]ontext matters" for retaliation claims, and "the significance of any given act of retaliation will often depend upon the particular circumstances." *Burlington Northern*, 548 U.S. at 69. At the pleading stage at least, Ozuruigbo has cleared the bar, and the particular circumstances will be evaluated as the litigation progresses.

Despite having the better of this argument, it must be noted that Ozuruigbo unfortunately did not address the issue in her response brief, so she came dangerously close to losing her retaliation claim at the dismissal stage. *See* Pl.'s Resp. But because, based on the Complaint, it is crystal clear that she has adequately alleged a retaliation claim, the Defendants' motion to dismiss this claim is denied. The alternative result—dismissal without prejudice, because this was Ozuruigbo's first attempt at stating a claim—is a needless waste of judicial resources because it would allow Ozuruigbo to replead the exact same allegations (and this time, brief the adverse employment action argument) to survive a second motion to dismiss. If, on the other hand, Ozuruigbo intended to voluntarily dismiss her retaliation claim, she should have said so. In a status report due on December 10, 2024, Ozuruigbo must confirm that her lack of response was not intended as a voluntary dismissal.

### C. Punitive Damages

The final issue on the dismissal motion is the Defendants' argument that the claims for punitive damages are not allowed under Title VII. Defs.' Br. at 13; *see* Compl. ¶¶ 47, 51, 55. Again, Ozuruigbo did not brief this issue. But this time the Defendants are correct. "A complaining party may recover punitive damages under

8

this section against a respondent (*other than a government, government agency or political subdivision*)." 42 U.S.C. § 1981a(b)(1) (emphasis added). The statute is clear that Ozuruigbo cannot recover punitive damages from Evanston (and, as explained earlier, the claims against Cummings and Gandurski are dismissed). The punitive damages claims are dismissed with prejudice.

### D. Sanctions

Ozuruigbo moves for sanctions against Evanston and its counsel under Civil Rule 11 for Evanston's Answer and Affirmative Defenses filed in response to the Complaint. Pl.'s Mot.; *see* R. 19, Evanston's Answer. Before evaluating the motion, the Court clarifies two points. First, the Court will consider Evanston's Answer, and not the Amended Answer, in evaluating the motion for sanctions because the Amended Answer was not filed until after the motion was filed. *See* Pl.'s Mot.; R. 28, Evanston's Am. Answer. Second, some of Ozuruigbo's allegations included in the notice to Evanston of her intent to file a sanctions motion are not included in the actual motion filed—and, more importantly, vice-versa. *See* R. 30, Evanston's Resp. at 2. The Court will consider only allegations that Ozuruigbo made in *both* the notice to Evanston and the filed motion. *See* Fed. R. Civ. P. 11(c)(2). Ozuruigbo did not file a reply brief addressing this (or any other) issue.

Under Civil Rule 11(c), sanctions may be imposed on a party for "making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998). None of the answers or affirmative defenses Ozuruigbo challenges

9

warrant sanctions against Evanston and its counsel. The Court addresses each in turn.

Paragraph 5 of the Complaint discusses Ozuruigbo's experience as an attorney:

> Plaintiff is an experienced litigation attorney who has personally and successfully conducted over twenty jury trials, tried over 100 bench trials, drafted over twenty-five appellate briefs, argued before the Illinois Appellate Court, deposed and defended hundreds of witnesses, trained and supervised attorneys, support staff and law students, and litigated thousands of cases.

Compl. ¶ 5. Evanston responded that "Defendant admits Plaintiff is an attorney and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegation in paragraph 5." Evanston's Answer ¶ 5. Ozuruigbo argues that this answer shows a lack of "reasonable inquiry," because Evanston employed Ozuruigbo for over a year and had more knowledge about her experience. Pl.'s Mot. at 3. Although Evanston might have admitted more about Ozuruigbo's experience, Evanston's failure to inquire or verify the number of trials, briefs, and depositions is not sanctions-worthy. When a plaintiff pleads multiple details (some not at all easy to verify) in a mishmash of an allegation in a complaint, it should not be surprising that the answer is given more leeway.

Paragraph 13 of the Complaint involves Ozuruigbo's communications with City Council members:

> Despite Cummings' repeated use of racist slurs and other inappropriate comments, Plaintiff received excellent feedback and performance reviews during this time.

10

> i. On or about August 9, 2021, Evanston City Council members Melissa Wynne and Clare Kelly told Plaintiff that she was doing an excellent job at City Council meetings, including stating that she "was providing more thoughtful feedback than they had ever received before" in response to their questions during the City Council meetings and explaining concepts in a way that all councilmembers could understand.
>
> ii. On or about August 17, 2021, Defendant Kelly Gandurski ("Gandurski") told Plaintiff and Cummings that Plaintiff had done an "excellent job" at an emergency city council meeting concerning allegations of sexual harassment and racial discrimination by a City lakefront lifeguard.
>
> iii. On or about September 20, 2021, Gandurski again provided Plaintiff with positive feedback after a special meeting of the City Council, and in fact told Cummings that she wanted Plaintiff to work for her in the City Manager's office.

Compl. ¶ 13. Evanston answered that:

> Defendant denies Cummings used racial slurs and other inappropriate comments directed towards Plaintiff. Defendant lacks knowledge or information sufficient to form a belief about the truth of the alleged conversations between Evanston City Council Members and Plaintiff. Defendants admits Gandurski provided feedback. Defendant denies the remaining allegations in paragraph 13.

Evanston's Answer ¶ 13. Ozuruigbo argues that Evanston was required to ask the council members about those statements before answering the Complaint. Pl.'s Mot. at 3–4. But the individual council members are *not* necessarily the same as the City of Evanston, and Evanston admitted to the allegations about the named Defendants. Again, this answer does not warrant sanctions.

Paragraph 20 of the Complaint likewise involves communication between Ozuruigbo and the City Council:

11

> During this time, not only was Plaintiff covering City Council meetings for Cummings in his absence, she was also managing all of the litigation on behalf of the City. The response to Plaintiff from Cummings and Gandurski became increasingly hostile. Nevertheless, Plaintiff continued to receive positive feedback from several City departments, administrative law judges, judges, Councilmembers, and colleagues, and the quality of her work never diminished. In fact, on or about January 10, 2022, Councilmember Braithewaite personally texted Plaintiff that she had done a "great job" during that night's City Council and executive session meetings.

Compl. ¶ 20. Evanston answered that: "Defendant lacks knowledge or information sufficient to form a belief about the truth of any text messages between former City Councilmember Braithewaite and Plaintiff. Defendant denies the remaining allegations contained in paragraph 20." Evanston's Answer ¶ 20. Ozuruigbo challenges this answer for the same reason as paragraph 13. Pl.'s Mot. at 3–4. Once again, Evanston had no obligation to inquire about an individual council member's text messages before answering the Complaint, so the answer to this paragraph does not warrant sanctions.

Next, Ozuruigbo argues that Evanston's answers to paragraphs 9, 26, and 27 of the Complaint are inconsistent. Pl.'s Mot. at 4. Paragraph 9 alleges that "Plaintiff reported racial discrimination and harassment to her direct supervisor, Cummings, from December 2021 to June 2022 orally and in writing. Plaintiff also repeatedly asked Cummings and the City to cease the discriminatory and harassing behavior." Compl. ¶ 9. Evanston answered simply "deny." Evanston's Answer ¶ 9. Paragraph 26 alleges that Ozuruigbo communicated with Cummings about discrimination:

> On or about February 2, 2022, in light of these ongoing racist actions and attitudes, Plaintiff wrote Cummings she felt obligated to respond with formal report of racist discrimination to Cummings and HR. Specifically, Plaintiff wrote:

12

> Good morning, Nick, just a heads up, you're going to get a letter from me via email which I will likely also send to HR in response to the Orange theory-someone feeling intimidated by me allegation. I keep feeling bombarded with racial discrimination but I never get chance to respond to the false allegations because they are always filtered through you. So I am writing a formal response now and I will send it to you shortly.

Compl. ¶ 26. Evanston answered: "Defendants admit Plaintiff wrote the text to Cummings including the sentences contained in Paragraph 26 but denies any wrongdoing by Defendant." Evanston's Answer ¶ 26. Paragraph 27 alleges that "Cummings replied by telling Plaintiff not to file any reports: 'I understand. I would prefer that it doesn't go this far just yet, because once you have that report it triggers certain things.'" Compl. ¶ 27. Evanston answered: "Defendant admits Cummings replied to Plaintiff with the referenced text and denies Cummings instructed Plaintiff not to file any reports." Evanston's Answer ¶ 27. It is true that Evanston could have provided a more fulsome answer to paragraph 9, for example, by including a reference to the exchange that Evanston admitted to in paragraphs 26 and 27. But paragraph 9 included much broader allegations, and when confronted with the specifics, Evanston appropriately admitted to them. These answers do not warrant sanctions.

Finally, Ozuruigbo challenges Evanston's second affirmative defense, namely, that Ozuruigbo "did not suffer economic injury because of Defendant's actions." Pl.'s Mot. at 6–7; *see* Evanston's Answer at 18. Ozuruigbo contends that by removing the case to federal court, Evanston somehow admitted that she suffered economic injury, supposedly because removing the case to federal court implicitly conceded that Ozuruigbo had Article III standing. Pl.'s Mot. at 6–7. As Evanston explains, however, the

13

defense was simply making the argument that Ozuruigbo voluntarily left her job and started a new one the next business day, so she did not suffer economic injury. Evanston's Resp. at 9. Even without this explanation, Ozuruigbo's argument borders on being frivolous: it is one thing to concede that Ozuruigo *alleges* that she suffered cognizable harm under Article III. Her allegations—if proven—of course would give rise to damages for emotional distress. To secure Article III standing, the plaintiff must *allege* harm that is concrete and particularized—the plaintiff need not *prove* that the harm actually happened to establish standing. The converse is true for a defendant who removes a case to federal court: the removal concedes only that the plaintiff has *alleged* a cognizable injury under Article III, not that the plaintiff suffered it.

Consider if the rule were otherwise: what if, at the end of the case, a jury rejects Ozuruigbo's allegation that she suffered emotional distress. Does that mean there was no Article III standing to bring the case in the first place? Or ask similar questions in any other litigation context: the jury disbelieves that a car-accident plaintiff suffered any physical injury; or summary judgment is granted against an employee on an overtime claim because the employee is exempt from overtime laws; or a jury rejects a breach-of-contract claim because there was substantial performance. Does that mean that there was no Article III standing to bring those cases in the first place? If yes, then that means the entire case gets wiped out for lack of subject matter jurisdiction. The argument is nonsensical. A defendant does not concede economic injury actually happened by simply removing a complaint to federal court.

14

All in all, even without considering Evanston's Amended Answer, Ozuruigbo has not identified any statement in Evanston's original Answer warranting sanctions. The motion for sanctions is denied.

## IV. Conclusion

In sum, the motion to dismiss is granted as to all claims against Cummings and Gandurski, and those claims are dismissed with prejudice. The motion to dismiss the request for punitive damages is granted, also with prejudice. As decided earlier, Evanston's motion to dismiss the other claims is denied. As explained earlier, however, in a status report due on December 10, 2024, Ozuruigbo must confirm that her lack of response on the retaliation claims was not intended as a voluntary dismissal of that claim. Separately, Ozuruigbo's motion for sanctions is denied.

Lastly, Ozuruigbo has moved to file an amended complaint and for additional sanctions. R. 95. The motion appears to have been mistakenly entered by Ozuruigbo on CM/ECF for presentment to the magistrate judge, but it is a motion that should be directed to the district judge. The Clerk's Office shall correct the entry. The Defendants' response to the motion is due by December 17, 2024. Ozuruigbo's reply is due by December 30, 2024.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 3, 2024